UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**KEVIN PAUL LADACH,**

      Plaintiff,                      **Civil Action No.: 13-CV-10771**

      vs.                               **District Judge Julian Abele Cook, Jr.**

                                        **Magistrate Judge Mona K. Majzoub**

**CITY OF ROMULUS, a Municipal
Corporation, d/b/a/ City of Romulus
Police Department, and CHIEF ROBERT
DICKERSON, in his official and
individual capacity, and CAPTAIN
DERRAN SHELBY, in his official and
individual capacity,**

      Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR A PROTECTIVE ORDER [16]**

      This matter comes before the Court on Defendants City of Romulus, Robert Dickerson, and Derran Shelby's Motion for Protective Order. Plaintiff filed a Response (docket no. 19), and Defendants filed a Reply (docket no. 20). The motion was referred to the undersigned for decision. (Docket no. 17.) The parties have fully briefed the motions; the Court has reviewed the pleadings and dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). The Court is now ready to rule pursuant to 28 U.S.C. § 636(b)(1)(A).

**I.    Background**

      Plaintiff filed this action alleging violations of the Michigan Whistleblower Protection Act (WPA), M.C.L. 15.361 et seq., his First Amendment right to free speech, and Michigan public

1

policy. (*See* docket no. 1.) Plaintiff is a member of the City of Romulus Police Department (the Department). (*Id.* ¶2.) His claims arise out of his alleged refusal to "commit a crime and destroy evidence of criminal conduct by a fellow police officer or engage in a cover-up of criminal conduct by a fellow officer which violated a citizen's *Fourth Amendment* rights." (*Id.* ¶1.) Specifically, Plaintiff alleges that on August 1, 2012, while he was supervising the Department's Records Bureau, he learned that another officer had allegedly struck a handcuffed prisoner. (*See id.* ¶¶24, 26.) Plaintiff contends that he then heard an unidentified person (whom Plaintiff later learned was the alleged victim) ask Defendant Dickerson for a copy of the surveillance video tape that would show him being struck. (*Id.* ¶27.) When Plaintiff heard Defendant Dickerson deny the request, Plaintiff made a backup of the video on one of the Department's computers. (*Id.* ¶29.)

Plaintiff further alleges that on September 21, 2012, attorney Michael Rataj sent the Department a FOIA request seeking "among other things, a request for any and all copies of the video" related to the "assault of the handcuffed prisoner." (*Id.* ¶31.) This request was forwarded to Plaintiff because he is was in charge of the Records Bureau. (*See id.* ¶ 32.) Plaintiff asserts that he prepared the materials for delivery to attorney Rataj and presented them to Defendant Dickerson for review. (*Id.* ¶34.)

Plaintiff alleges that he was then called to a meeting with Defendant Dickerson and Defendant Shelby, who were surprised that the video had not been deleted.[1] Plaintiff further alleges that Defendant Shelby said the video "ain't pretty" and that Defendant Dickerson said, "I'm not giving this video out so some attorney can help this guy fill out his complaint packet." (*Id.* ¶¶ 43,

---

[1] Plaintiff notes that Department policy is to keep videos for 30 days, after which time the videos are automatically deleted from the Department's computers. (*Id.* ¶28.)

2

44.) Plaintiff was then instructed to complete a time extension for the FOIA request. (*Id.* ¶ 45.)

Plaintiff claims that on October 4, 2012, Defendant Dickerson instructed Plaintiff to delete the digital video from the Department computer and from a USB drive onto which the video had been copied. (*Id.* ¶ 49-52.) Defendant Dickerson also asked Plaintiff to give him the only two copies of the video on CD, which had been made pursuant to the FOIA request; Defendant Dickerson indicated that the discs would be turned over to the city attorney.[2] (*Id.* ¶ 52.) Plaintiff alleges that later that day, he and Defendant Shelby had a conversation wherein Plaintiff aired his concerns about being part of a "cover up," at which time Defendant Shelby stated, "I don't think there is any kind of cover up." (*Id.* ¶ 54-58.)

The next day, Plaintiff contacted the Michigan Attorney General's Office to report his suspicions of the alleged assault and the possible cover up. (*Id.* ¶ 61.) On October 8, 2012, Plaintiff told Defendants Shelby and Dickerson that he had reported the incident and that he had made a copy of the video. (*Id.* ¶ 62.) Plaintiff alleges that he met with a human resources representative on December 5, 2012, to report a "hostile work environment" created by Defendants Dickerson and Shelby. (*Id.* ¶ 66.) Then, after several meetings, and after allegedly discovering that Defendant Shelby was paid for time that he did not work, on January 9, 2013, Plaintiff was demoted from Detective Sergeant to Sergeant and road patrol supervisor, which included a loss of significant pay and benefits. (*Id.* ¶¶ 67-81.)

---

[2]Ultimately, it appears that Defendants did not provide the information to attorney Rataj as he requested because attorney Rataj filed an action under FOIA in the Wayne County Circuit Court seeking the same information. (*See* docket no. 16 at 2 n.2.) According to Defendants, Plaintiff's attorney, Joel B. Sklar, also represents attorney Rataj in his FOIA action, which is currently pending appeal after the Wayne County Circuit Court found that the information attorney Rataj requested need not be disclosed.

Plaintiff filed his Complaint in this matter on February 25, 2013.  (*Id.* at 18.)  On June 28, 2013, Plaintiff served Defendants with his First Request for Production of Documents.  (Docket no. 16-2.)  As part of his request, Plaintiff asked Defendants to produce all documents, including video, related to the alleged assault on the unknown victim, any reports related to the incident, and any documents related investigations of the incident, whether by the Department or the City of Romulus.  (*See id.*, Request Nos. 3, 4, 9, 10, 18, and 21.)  Defendants refused to produce the requested documents without a protective order, and when the Parties could not reach an agreement with regard to the scope of such an order, Defendants filed their instant Motion.

## II.     Governing Law

### A.     Discovery Standard

The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad.  *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 402 (6th Cir. 1998).  Parties may obtain discovery on any matter that is not privileged and is relevant to any party's claim or defense if it is reasonably calculated to lead to the discovery of admissible evidence.  Fed.R.Civ.P. 26(b)(1).  "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed.R.Evid. 401.  But the scope of discovery is not unlimited.  "District courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce."  *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007).  Rule 34 allows a party to serve requests for production of documents on an opposing party.  Fed.R.Civ.P. 34.  A party receiving this type of discovery request has thirty days to respond with answers or objections.  Fed.R.Civ.P. 34(b)(2)(A).

**B.     Protective Order**

Rule 26(c) allows the Court to issue protective orders for good cause shown to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including that the disclosure or discovery not be had or that the disclosure or discovery be limited to certain matters. Fed.R.Civ.P. 26(c). The party seeking a protective order has the burden of showing that good cause exists for the order. *Nix v. Sword*, 11 Fed. App'x 498, 500 (6th Cir.2001). To show good cause, the movant must articulate specific facts showing clearly defined and serious injury resulting from the discovery sought and cannot rely on conclusory statements. *Id.*

Local Rule 26.4(a) "governs motions for protective orders based on a claim that information is privileged or subject to protection." E.D. Mich. LR 26.4(a). To assert a claim of privilege, a party must "(A) state the claim that information, otherwise discoverable, is either privileged or subject to protection, and (B) without revealing privileged or protected information, describe the nature of the documents . . . not produced or disclosed, to enable the court to assess application of the privilege or protection." (*Id.*)

**III.    Analysis**

At issue in Defendants' current Motion are Plaintiff's following Requests for Production:

3.    Any and all documents (including video, electronic or digital records contained in the definition of "Document" or "Documents" above) which concern the alleged assault on a handcuffed arrestee by and referred to in the Complaint.

4.    All documents (including video, electronic or digital records contained in the definition of "Document" or "Documents" above) which concern the procurement or acquisition of any statement from the arrestee who was assaulted by an Romulus Police Department Officer as alleged the Complaint.

9.    The original report, any supplemental reports, the use of force report, and any

>    documents related to the Romulus Police Department's response (including any investigation or discipline) to the incident described in the Complaint involving the assault of the handcuffed prisoner by a Romulus Police Officer, believed to be Officer Jones.
>
> 10. The internal investigation related to Romulus Police Department incident involving the assault of the handcuffed prisoner.
>
> 18. All documents concerning any investigation by the City of the assault by any officer who assaulted the handcuffed arrestee, as alleged in the Complaint.
>
> 21. All documents concerning any investigation of the assault of the arrestee by a Romulus Police Department Officer as alleged in the Complaint, conducted by the City of Romulus and/or the City of Romulus Police Department and/or any Defendant.

(Docket no. 16-2; docket no. 16.)

Defendants acknowledge that "there was an altercation between the arrestee and the officer, during which the arrestee spat at the officer and was struck." (Docket no. 16 at 12 n.3.) They argue, however, that whether the incident occurred and whether there was any subsequent investigation is irrelevant for purposes of Plaintiff's instant claims. That is, Defendants note that Plaintiff need only establish that he was engaged in a "protected activity" and that Defendant retaliated against him for engaging in that protected activity, but they argue that Plaintiff can meet his burden on the former element as long as he had a good faith belief of a "suspected violation" of law. (*See id.* at 12-13.) Additionally, Defendants assert that disclosing the identity of the third-party victim would violate his right to privacy and that some of the information requested by Plaintiff is protected by the deliberative-process privilege.[3] (*Id.* at 15-20.)

---

[3] Defendants also note that Plaintiff's attorney represents attorney Rataj in the FOIA action wherein attorney Rataj is attempting to secure the same information that Plaintiff seeks through his discovery requests. They contend that even if the Court were to order discovery subject to a protective order, attorney Sklar would be unable to avoid sharing the information with attorney Rataj, whether he did so "intentionally or inadvertently." (Docket no. 16 at 16-17;

### A. The Relevance of the Information Requested by Plaintiff

To make out a case under Michigan's WPA, Plaintiff must show that (1) he was engaged in protected activity as defined by the act, (2) he was discharged or discriminated against, and (3) a causal connection exists between the protected activity and the discharge or adverse employment action. *Wurtz v. Beecher Metro. Dist.*, 298 Mich. App. 75, 825 N.W.2d 651, 655–56 (2012). To show that he was engaged in a protected activity, Plaintiff need only show that he reported a suspected violation of law to a public body and that his report was made in good faith. *See* M.C.L. 15.362; *Demaagd v. City of Southfield*, 2006 WL 2312086, *3 (Mich. Ct. App. Aug 10, 2006) (discussing whether such a report must be "reasonable"). Thus, Defendants argue, Plaintiff's request for any information related to the incident between the unknown victim and the officer "believed to be Officer Jones" is irrelevant because it does not matter whether the incident even occurred. (Docket no. 16 at 13-14.) According to Defendant, Plaintiff need only show that he had a good-faith belief that the incident occurred and that Defendants tried to cover it up, even if that belief is unfounded.[4] (*Id.*) Defendants further assert, "Plaintiff will suggest that if the event occurred as Plaintiff believes, Defendants would be more motivated to retaliate based on his report[, but] . . . the WPA precludes **any** retaliation . . . regardless of whether the employer had a 'strong' or 'weak'

---

docket no. 20 at 4 n.4.) Defendants, however, provide no evidence to suggest that attorney Sklar (or his staff) will be unable (or unwilling) to abide by the terms of such an order. The Court is cognizant of the potential conflict, but in absence of any evidence to the contrary, the Court presumes that counsel will follow the Court's orders. Moreover, as Plaintiff argues, the presence of a state-court ruling that another individual is not entitled to certain information under the FOIA has no bearing on whether the same information is discoverable under the Federal Rules. (*See* docket no. 19 at 16; *see also Baldridge v. Shapiro*, 455 U.S. 345 (1982) ("Unlike the FOIA, . . . the discovery provisions under the Federal Rules focus upon the need for the information rather than a broad statutory grant of disclosure.").

[4]Defendants do not go so far as to concede that Plaintiff engaged in a protected activity.

motive."[5]  (*Id.* at 14 (emphasis in original).)

Plaintiff asserts that Defendants' motive is entirely relevant to his case.  (*See, generally*, docket no. 19 at 11-14.)  The Court agrees.  While Defendants artfully discuss Plaintiff's burden in making out his WPA claims, they significantly downplay Plaintiff's need to show the causal connection between his reporting of the incident and his demotion.[6]  Defendant is correct that the degree of motivation is irrelevant for Plaintiff's claims, but the incident itself and the severity of the incident are relevant to show whether Defendants had *any* motivation to retaliate.  Thus, unless Defendants are willing to concede that such a causal connection exists, the materials that Plaintiff requested are, at least, reasonably calculated to lead to the discovery of admissible evidence.[7]

### B.    The Third Parties' Privacy Interest

Defendants next assert that the privacy rights of the officer involved in the alleged assault and the privacy rights of the alleged victim outweigh the need for disclosure of the information requested by Plaintiff.[8]  (Docket no. 16 at 15-17.)  Defendants argue that turning over the information that Plaintiff has requested, including the name of the victim and his alleged acts, would "force[ the victim] out of obscurity and label[ him] a racist" and would "compel[ him] to testify

---

[5]In their Reply to Plaintiff's Response, Defendants also assert that "discovery to non-parties is more limited and subjected to higher scrutiny than discovery directed to a party." (Docket no. 20 at 2.)  Defendants' argument is inapposite, however, because Plaintiff's discovery requests *are* directed to a Party.

[6]Again, although Defendants do not state so outright, it appears that they intend to assert that Plaintiff was demoted for a legitimate, non-discriminatory reason.

[7]The Court need not address the Parties' arguments with regard to Plaintiff's First Amendment claim or his Public Policy claim because the Court finds that the information requested is relevant to his WPA claim.

[8]Defendants generally assert that the privacy rights of both individuals are at stake in this matter, but Defendants' argument focuses almost solely on the alleged victim.

about embarrassing (irrelevant) matters in front of multiple individuals."[9] (*Id.* at 16.) Moreover, Defendants draw the Court's attention to a letter allegedly sent by the victim to the Department wherein the victim asks that the video "**NOT** be released to anyone" because the video "will not only impact my current employment status, but also my personal safety as well."[10] (Docket no. 16-3 at 2 (emphasis in original).) In one specific instance, Defendants assert that Plaintiff's employer will inevitably find out about the incident because "it would likely be difficult to arrange for his deposition without the necessity of notifying his boss." (Docket no. 16 at 16, n.4.)

The Parties agree that a protective order is necessary in this matter, but they disagree on the scope of such an order. Defendants assert that the Court should enter an order precluding disclosure of the information sought by Plaintiff in its entirety. (*See* docket no. 16 at 20.) Plaintiff argues that the Court should allow discovery of the requested materials to proceed but should limit the use of such materials to this litigation. (*See* docket no. 19 at 17-18.) Plaintiff suggests that such an order would "sufficiently protect[] the privacy interests of [the] non-litigants, including protection from annoyance, embarrassment and oppression." (*Id.* at 17 (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984)).)

While the Court appreciates Defendants' efforts to protect the privacy interests of the unknown victim and the officer involved in the alleged incident, Defendants have not met their burden of showing that good cause exists to preclude all discovery of the information that Plaintiff

---

[9] It appears that in addition to spitting at the officer, the victim made "racist" remarks.

[10] Plaintiff challenges the veracity of this letter, contending that the letter is either falsely attributed to the victim or that the victim was coerced into making his request. (*See* docket no. 19 at 9-10.) The Court need not address this claim, however, because, as discussed herein, disclosure of the requested information under a proper protective order is appropriate even if the victim did make such a request.

seeks. First, Defendants assert that the information will inevitably be disclosed to "Plaintiff's counsel, Plaintiff, the court reporters, paralegals, secretaries, court clerks and other judicial staff, this Court, the jury and anyone in attendance at trial." (Docket no. 16 at 16.) Defendants' concerns that such individuals cannot properly protect the confidentiality of such information or that they would be prejudiced against the victim due to any disclosure are unfounded. Nevertheless, the Court will limit disclosure of any information identifying the victim to Plaintiff's counsel; thus, disclosure to all of the individuals listed by Defendants is not inevitable. The Court acknowledges that additional disclosure may be necessary should this matter proceed to trial, but this Order does not preclude Defendants from asking the Court for additional protections should such a need arise. Second, the Court finds that Plaintiff has sufficiently addressed Defendants' concern that the victim's employer may find out about the incident if Plaintiff is asked to testify at a deposition; Plaintiff's counsel has offered to "make himself available at any hour on any day for the deposition" so that it "will not interfere with his work schedule."[11] (Docket no. 19 at 18 n.10.) Finally, the Court is not persuaded by Defendants' contention that the victim is entitled to privacy because he would be embarrassed to testify about his own actions. While the victim may have "already indicated a desire to forget about it," such a desire does not prohibit Plaintiff from engaging in discovery.

### C. The Deliberative Process Privilege

Defendants assert that even if they are relevant, the deliberative-process privilege applies to the reports and investigation documents that Plaintiff requested. (Docket no. 16 at 17.) At a

---

[11]The Court also notes that Defendants' argument alleging that the victim may be harmed by attending his deposition is premature. Although the Parties seem to agree that Plaintiff will want to depose the victim, such a deposition has not been noticed. Moreover, should the victim wish to challenge the propriety of his deposition, he may do so on his own accord.

minimum, Defendants argue, the Court should allow Defendants to redact the records, including the identities of the individuals involved. (*Id.*) Plaintiff does not assert otherwise and only notes that the deliberative-process privilege does not protect "factual material." (Docket no. 19 at 14-15.)

Under the executive privilege "intra-government documents which reflect advisory opinions, recommendations, and deliberations comprising part of the process by which governmental decisions are formulated" are protected from disclosure in discovery. *See Dowd v. Calabrese*, 101 F.R.D. 427, 430 (D.D.C. 1984). Factual material, including reports and summaries, is not protected by the privilege. *See Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344-46 (E.D. Pa. 1973). Thus, factual material contained in the documents requested by Plaintiff is not protected by executive privilege. Plaintiff is entitled to such factual statements. Therefore, Defendants must produce the requested materials but should redact the appropriate portions of the documents prior to production, as required by the executive privilege, and list the same in their privilege log. Defendants may not redact the names of any individuals involved in this matter under the executive privilege doctrine.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Protective Order is **GRANTED IN PART** and **DENIED IN PART.** Defendant is ordered to produce the information requested in Plaintiff's Requests for Production Nos. 3, 4, 9, 10, 18, and 21, subject to the following protections:

    a.    any use or dissemination of the information disclosed pursuant to this order is limited to any use or dissemination that is necessary for Plaintiff's counsel to prepare and try this case;

    b.    any materials produced pursuant to this Order that identify the alleged victim are limited to attorneys' eyes only; and

      c.      Defendants may redact from their production any information that is protected by executive privilege as long as Defendants list the same in their privilege log.

**IT IS FURTHER ORDERED** that this protective order has no application except to information gained by Plaintiff through his Requests for Production Nos. 3, 4, 9, 10, 18 and 21.

## NOTICE TO THE PARTIES

Pursuant to Federal Rule of Civil Procedure 72(a), the parties have a period of fourteen days from the date of this Order within which to file any written appeal to the District Judge as may be permissible under 28 U.S.C. § 636(b)(1).

Dated: February 10, 2014        s/ Mona K. Majzoub
                                         MONA K. MAJZOUB
                                         UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Order was served upon Counsel of Record on this date.

Dated: February 10, 2014        s/ Lisa C. Bartlett
                                         Case Manager